FOOTE *et al.*, *Appellants*, v. CLARK *et al.*, *Appellants*.

1. **Land:** DECREE AGAINST PRIOR GRANTORS. One claiming title to land is bound by a decree against persons under whom he claims.

2. ———: CONVEYANCE BY LIFE-TENANT: COVENANTS. Land was devised to the testator's wife for life, with remainder to his children in fee. A conveyance by the widow recited that she was the owner of the life-estate and the guardian of the children, and authorized

Foote v. Clark.

to sell their interest by the decree of a court of another state ; and that, by virtue of her own right, and as guardian, and in pursuance of the decree she " bargained, sold and granted " the land to the grantee and his heirs. *Held* that, under Revised Statutes, 1845, page 221, section 14, the deed contained the statutory covenants and that they were the personal covenants of the widow.

3. ———— : FORMER DECREE : RES JUDICATA. A decree against persons under whom defendant claims, setting aside the deed so far as it purported to convey the interests of the children, on the ground that the order authorizing the sale was void, is not *res judicata* on the question of the liability of the widow and children on her covenants.

4. ———— : CONVEYANCE: INUREMENT OF TITLE TO GRANTEE. As the deed of the widow purported to convey to the grantee an indefeasible estate in fee simple, any interest which she inherited from her children who died prior to her death inured to the grantee and those claiming under him.

5. ———— : ———— : ESTOPPEL : COVENANTS. The fact that the children inherited from the widow land exceeding in value the damages arising from a breach of the covenants in her deed does not estop them from recovering the land from the grantee and those claiming under him, lineal and collateral warranties and their incidents having been abolished in this state.

6. ———— : ———— : ———— : ————. The children are, however, liable on the covenants of their mother when her grantee is evicted.

7. Conveyance : COVENANTS : NON-RESIDENCE AND INSOLVENCY OF COVENANTERS : INJUNCTION. · Where the widow left no property in this state and the children are non-residents and insolvent, in ejectment by them after their mother's death, defendant, who holds under the widow's grantee, is entitled to have his damages assessed for breach of the widow's covenants ; and execution in favor of the children will be stayed until the damages are paid, and until this is done they will be enjoined from selling the land.

8. ———— : PURCHASER WITH NOTICE. A coplaintiff who received a deed from one of the children with full knowledge of all the facts, and upon the consideration that he would prosecute this suit to final determination, stands in no better position than the other plaintiffs.

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

REVERSED AND REMANDED.

*H. S. Kelly*, for plaintiffs, appellants.

(1) The court erred in giving defendants one-eighth of the land in controversy. Plaintiffs were entitled to recover the whole tract. The deed of Mrs. Hunt to Abbott did not contain any warranty or covenants of warranty of the title in fee. The deed must be viewed from the four corners, and be construed as the parties intended that it should. *Lively v. Rice*, 22 N. E. Rep. 888; *Allen v. Holton*, 20 Pick. 458; *Sweet v. Brown*, 12 Metc. 175; *Howard v. Chase*, 104 Mass. 249. The meaning or intention must be the guide to the construction of the instrument. 2 Dev. on Deeds, sec. 850; *Lindley v. Groff*, 34 N. W. Rep. (Minn.) 26. (2) Statutory covenants ought to be strictly construed, and held to apply to the interest owned by the grantor and limited to it. *Finley v. Steele*, 23 Ill. 56; *Douglas v. Lewis*, 9 S. P. Ct. Rep. 634; *Redding v. Lamb*, 45 N. W. Rep. 997. (3) The deed of Mrs. Hunt to Abbott having been executed in North Carolina, it must be construed and its character and effect determined by the law of that state, which is presumed to be the common law, and by that law the deed in question is no more than a quitclaim. *Scudder v. Bank*, 1 Otto, 406, 414; 91 U. S. 406; *Liverpool v. Ins. Co.*, 9 S. P. Ct. Rep. 474; *Jackson v. Green*, 14 N. E. Rep. 89; *Bethell v. Bethell*, 92 Ind. 318; *Craig v. Donovan*, 63 Mo. 513; *Bethell v. Bethell*, 54 Ind. 428. (4) There is no element of estoppel in this case, as contended for by defendant. *Justein v. Town of Lancaster*, 20 Mo. App. 559; *Rodgers v. Marsh*, 73 Mo. 64; *Bates v. Perry*, 51 Mo. 449; *Eitelgeorge v. Ins. Co.*, 69 Mo. 52. (5) Defendant had the life-estate of Mrs. Hunt, and had a right to improve the land, and plaintiff had no right to object or interfere. *Bates v. Perry*, 51 Mo. 449. (6) The law imputed notice to defendant of plaintiff's title. He was bound to take notice of what was on record. The deed of Mrs. Hunt showed on its face the condition of the title. *Mason v. Black*,

87 Mo. 329, and cases cited ; *Orrick v. Durham*, 79 Mo.
174. Minors are not estopped ( *Burke v. Adams*, 80
Mo. 504 ); nor are *femes covert*, except as to their sepa-
rate estates. *Rannells v. Gerner*, 80 Mo. 474 ; *Cottrell
v. Spiess*, 23 Mo. App. 98. ( 7 ) The court did not err
in excluding evidence of improvements by defendants.
The defendants are strangers to plaintiffs' title, and
there was no equitable ground to attach a lien upon the
land for improvements, etc. *McCannahan v. Smith*,
76 Mo. 428 ; *Henderson v. Langley*, 76 Mo. 226 ; *Jasper
County v. Wadlow*, 82 Mo. 172 ; *Malone v. Stretch*, 69
Mo. 25 ; *Smith v. Phelps*, 63 Mo. 585. In *Railroad v.
Shortridge*, 86 Mo. 662, the improvements were made
with consent of plaintiffs. ( 8 ) The court did not err
in excluding evidence as to whether plaintiffs received by
inheritance assets from the estate of Mrs. Hunt equal to
the value of the land in controversy. Such proof would
constitute no defense to this action of ejectment. Plain-
tiffs do not inherit or obtain the land from Mrs. Hunt,
so that her covenants, if she made any, are not binding
on them, and do not affect the right of plaintiffs to the
land. *Walker v. Deaver*, 79 Mo. 674 ; *Ragan v. McEl-
roy*, 98 Mo. 349 ; *Barlow v. Delaney*, 86 Mo. 583 ;
*Schnelle v. Barlow*, 34 Fed. Rep. 853 ; *Barlow v. Dela-
ney*, 40 Fed. Rep. 97. ( 9 ) Rebutter by collateral
warranty is not a part of the common law of this coun-
try. *Goodwin v. Kumm*, 45 N. W. Rep. 853. ( 10 )
The alleged contract with, and conveyance to, Kelley
was not champertous, did not concern defendants, and
they have no interest in it. *Million v. Ohnsorg*,
10 Mo. App. 432 ; *Duke v. Harper* 66 Mo. 51. ( 11 )
That the petition may locate the land in the northwest
quarter instead of the northeast will not affect the case.
It is such an error as might be corrected by amendment
and will be considered as done. The parties agreed that
James C. Hunt was the common source of title, and that
both parties claim under him. ( 12 ) The plaintiffs
contend that the matters set up in defendant's answer

are *res judicata*. That the judgment and decree, in the former case of *Foote v. Sanders*, is binding on the defendant and privies, and settled the *status* and rights of the parties to the land in question. *Crispin v. Hannovan*, 50 Mo. 415 ; *Strong v. Ins. Co.*, 62 Mo. 289 ; *State v. Barker*, 26 Mo. 497 ; *Cooley v. Warren*, 53 Mo. 166 ; *Wood v. Ensel*, 63 Mo. 193 ; *Railroad v. Levy*, 17 Mo. App. 501 ; *Preston v. Rickets*, 91 Mo. 320.

*Wm. Heren* and *B. R. Vineyard* for defendants, appellants.

( 1 ) The words, "grant, bargain and sell, " in the deed of Diana Hunt, the mother of plaintiffs, constitute covenants that she was at the time seized of an indefeasible estate in the fee simple of the land in controversy; that the land was free from incumbrances, and for further assurances to be made by her and her heirs. 1 R. S. 1889, sec. 2402, the same language being in all previous revisions of the statutes. Besides, our statute provides that, when all the obligors or promisors shall die, the debt or contract shall survive against the heirs. 1 R. S. 1879, sec. 660 ; 1 R. S. 1889, sec. 2386. ( 2 ) The statutory words of "grant," bargain and sell" constitute covenants of warranty, though words of release be added, and though the grantor describe himself as administrator, trustee, or as acting in some other representative capacity. *Murphy v. Price*, 48 Mo. 247 ; *Altringer v. Capeheart*, 68 Mo. 441 ; *Mason v. Caldwell*, 5 Gilman ( Ill.) 196 ; 48 Am. Dec. 333, directly in point; *Sumner v. Williams*, 8 Mass. 162 ; *King v. Gilson*, 32 Ill. 348. And the granting clause determines the interest intended to be conveyed, and prevails over the introductory statement. 2 Hill on Real Estate, 486, par. 4 ; *Blagg v. Miles*, 1 Story's Reports, 427. ( 3 ) Covenants in the deed of an ancestor are binding on his heirs to the extent of the assets inherited by them from such ancestor. *Miller v. Bledsoe*, 61 Mo. 105 ; *Barlow v. Delaney*, 86 Mo, 583 ; *Bates v. Norcross*, 17 Pick. 14 ; R. S. 1845,

220, sec. 8 ; 2 R. S. 1889, sec. 8839 ; *Russ v. Perry*, 49 H. N. 547.  ( 4 )  The words, "grant, bargain and sell," contain by the statute express covenants of title in fee, and for further assurance, which run with the land. *Maguire v. Riggin*, 44 Mo. 514 ; *Dickson v. Desire*, 23 Mo. 151 ; *Miller v. Bledsoe*, 61 Mo. 96 ; 28 Am. Dec. 271 ; R. S. 1845, 221, sec. 14 ; 1 R. S. 1889, 612, sec. 2402 ; *Bates v. Norcross*, 17 Pick. 14 ; *Jones v. Whitsett*, 79 Mo. 191; *Allen v. Kennedy*, 91 Mo. 329.  And covenants which run with the land operate as estoppels.   They are muniments of title.   *Boyce v. Longworth*, 11 Ohio, 235 ; 2 Herman on Estoppel, sec. 672 ; *King v. Gilson*, 32 Ill. 348.  ( 5 )  The court erred in refusing to permit the defendants to prove the champertous contract made between plaintiff Kelley and his coplaintiffs, as set up in their answer.   The proof of such a state of facts would preclude plaintiffs, certainly Kelley, from recovering. *Million v. Ohnsorg*, 10 Mo. App. 432 ; *Duke v. Harper*, 66 Mo. 51.  ( 6 )  It is not necessary that eviction should occur before the grantee or his assigns can assert his or their rights under the covenants in the deed of the original grantor.  *Dixon v. Desire's Adm'r*, 23 Mo. 151.  ( 7 ) A court of equity will take jurisdiction to avoid a multiplicity of suits.   *Biddle v. Ramsey*, 52 Mo. 153.  And where the party proceeded against is insolvent.  *Fox v. Hubbard*, 79 Mo. 390.   And where injustice would be done even though there is an adequate remedy at law. *Pratt v. Clark*, 57 Mo. 189 ; *Stewart v. Caldwell*, 54 Mo. 536 ; *Saving Inst. v. Collonious*, 63 Mo. 290.   And to avoid circuity of action.  *Alexander v. Relfe*, 74 Mo. 495.   And when a court of chancery obtains jurisdiction it will not stop short of complete justice between all the parties. *Sav. Inst. v. Collonious*, 63 Mo. 295 ; *Pomeroy v. Benton*, 57 Mo. 550.   And this equitable jurisdiction may be invoked by and in a cross-bill or cross demand. *Barnes v. McMullins*, 78 Mo. 260. ( 8 ) The heirs of Diana Hunt, being liable on the covenants in the deed of their mother to the extent of the assets received from her

estate, may be proceeded against on these covenants jointly. *Walker v. Deaver*, 79 Mo. 79. ( 9 ) And the heirs of Diana Hunt are estopped or rebutted from claiming the land sued for, they having inherited assets from her of greater value than the land, and this estoppel or rebutter may be properly set up against the heirs by way of defense, as in the case at bar. 1 Wash. on Real Prop. p. 255 ( * p. 207 ) sec. 20 ; *Russ v. Perry*, 49 N. H. 547 ; *Bates v. Norcross*, 17 Pick. 14 ; 3 Wash. on Real Prop. p. 480 (* p. 667), sec. 32 ; *Cole v. Raymond*, 9 Gray, 217 ; 2 Herman on Estoppel, p. 806, sec. 672, and the long list of authorities there cited ; *Ragan v. McElroy*, 98 Mo. 349 ; *Broadwell v. Merritt*, 87 Mo. 95, 102. ( 10 ) Defendants should have been permitted to prove the allegations in their answer relative to purchase money and taxes paid and improvements made, and on accounting thereof should have been taken and judgment rendered for the amount due, to be made a lien on the land. *Railaroad v. Shortridge*, 86 Mo. 662 ; *Sims v. Gray*, 66 Mo. 613 ; *Mobley v. Nave*, 67 Mo. 546. ( 11 ) Mrs. Diana A. Hunt bound herself by the covenants in the deed made by her, even though she thought she was conveying only her life-estate, and in addition was, as guardian, conveying the title of her children. If she was not in fact their guardian, or did not convey any of their title by her deed, she still bound herself by the covenants therein. A person acting in a representative capacity binds himself, if he exceeds his authority, and does not bind his principal. *Murphy v. Price*, 48 Mo. 249 at bottom. One assuming to act for another is always liable unless he binds his principal. *Heath v. Goslin*, 80 Mo. 316 ; *Blakely v. Bennecke*, 59 Mo. 193 ; *Glenn v. Bergmann*, 20 Mo. App. 346 ; *Lapsley v. McKinstry*, 38 Mo. 245. ( 12 ) The covenants in a deed are binding on the grantor, though both he and the grantee knew the title to be void. *Kellogg v. Malin*, 50 Mo. 503 at bottom. ( 13 ) The owner of land and standing by and seeing improvements put thereon by one in possession acting

in good faith and believing himself to be the owner is estopped from setting up title to the land as against such possessor, especially after the lapse of a number of years. *Landrum v. Bank*, 63 Mo. 48; *Collins v. Rogers*, 63 Mo. 515 ; *Evans v. Snyder*, 64 Mo. 516.

BLACK, J.—This is an action of ejectment to recover one hundred acres of land in Andrew county. The plaintiffs, except Henry S. Kelley, are the surviving children and devisees of James C. Hunt. Kelley acquired a one-fourth interest from his coplaintiffs. The defendant Clark is the tenant of defendant Toole, who makes the defense. There was a judgment for the plaintiffs for seven-eighths of the land, and from that judgment both parties appealed.

James C. Hunt died testate, a resident of the state of North Carolina, in June, 1847, the owner of the one hundred and sixty acres, of which the land in question is a part. He devised all of his property, real and personal, to his wife, Diana A. Hunt, during her natural life or widowhood, remainder to his six children in fee. Mrs. Hunt executed and delivered to David Abbott a deed dated March 27, 1849, which recites that she was the owner of a life-estate in the premises ; that she was the guardian of the six named minors who owned the fee in remainder ; that the superior court of law and equity for Wilkes county, state of North Carolina, made an order that she, as such guardian, sell the property, "therefore, the said Diana A. Hunt by virtue of her own right and estate in said lands, and by virtue of the power and authority she has as guardian of the said wards, and in pursuance of the above-recited decree, and in consideration of $1,200 to her paid by the said David Abbott, hath bargained, sold and granted, and by these presents doth bargain and sell and grant to the said David Abbott and his heirs and assigns, a certain tract of land in Andrew county, of the state of Missouri, known and designated," etc.

The deed is signed by Mrs. Hunt for herself and as guardian for the wards therein named. Abbott and those holding under him have had continuous possession of the premises. Abbott conveyed to Smith, giving the latter a bond for a title. The one hundred acres in suit were sold under partition proceedings between Smith's heirs, and the defendant Toole became the purchaser at the price of $2,100, and received a deed dated May 15, 1854. He also procured a decree vesting in him all the title of the Abbott and Smith heirs. The plaintiffs in the present suit were not parties to either of the proceedings just mentioned. The defendant Toole conveyed to Wm. Ardery on March 21, 1861.

In 1874, the surviving heirs of James C. Hunt (plaintiffs in this case) being joined by their mother commenced a suit in the proper circuit court of this state against the heirs of Ardery to set aside the deed from their mother to Abbott, so far as it professed to convey the interest of the children, and in February, 1874, the circuit court made a decree according to the prayer of the petition, which was affirmed by this court. *Foote v. Sanders*, 72 Mo. 616. Subsequently, and in March, 1884, the heirs of Ardery conveyed back to defendant Toole. Three of the children named as devisees in the Hunt will died after the death of their father and before the death of their mother. She died in 1886; and thereafter and in the same year the plaintiffs commenced the present suit.

1. The plaintiffs in their reply to the many matters set up in the defendant's answer plead the decree rendered in the suit of the plaintiffs against the Ardery heirs as *res judicata* as to all the matters of defense in the present case. The petition in that case stated, in substance, that Diana A. Hunt was not the guardian of the children and devisees of James C. Hunt at the date of the order of sale made in the superior court of equity in North Carolina, and that that court had no jurisdiction to order the sale of the lands situate in this state.

The defendants in that suit insisted that the will of
James C. Hunt gave to Diana A. Hunt a life-estate with
power to sell and convey the fee, and that her deed to
Abbott was a good execution of that power.     All of
these issues were found for plaintiffs.     As the defend-
ant Toole holds under the Ardery heirs he is bound by
that decree.     The decree is, therefore, conclusive in this
case as to the following matters of fact and law, namely :
Diana A. Hunt was not the guardian of the minors for
whom she professed to act ; the order for the sale of
the land made by the North Carolina court is void, and
gave her no power to sell the interest of the children ;
and her deed to Abbott conveyed nothing but her life-
estate.     The decree, however, goes no further and set-
tles no other issues of fact or law.

2.     The defendant Toole in his answer in this case
set up the deed from Diana A. Hunt to Abbott and the
subsequent conveyances, and alleges that by that deed
she covenanted to and with Abbott that she was seized
of an indefeasible estate in fee simple, and for further
assurances to be made by her and her heirs ; that the
plaintiffs, as the heirs of Diana A. Hunt, have not kept
and performed the covenants of their mother, but on
the contrary brought this suit to evict defendant.     The
answer goes on to say, and the defendant offered to
prove, that the plaintiffs inherited from their mother
real estate situate in the state of North Carolina of the
value of $10,000 ; that plaintiffs, except Kelley, reside
in that state, have no property in this state other than
the land sued for, and are now insolvent.     The court
excluded all of this evidence to which ruling defendant
excepted.

We are first to consider whether Diana A. Hunt
made the alleged covenants, and, if she did, whether
she is personally bound by them.     The deed, it will be
seen, undertakes to convey an estate of inheritance in fee
simple, and uses the words, " bargain, sell and grant."
By our statute in force at the date of the deed, the

words. "grant, bargain and sell," contain "express covenants on the part of the grantor, for himself and his heirs, to the grantee, his heirs and assigns, that the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate in fee simple," etc., and for further assurances "to be made by the grantor and his heirs," etc.   R. S. 1845, sec. 14, p. 221. Unless restrained by express terms contained in the deed, these words make the statutory covenants a part of the deed with the same force and effect as the covenants would have if written out in full in the deed.

Diana A. Hunt, in conveying the interest of the children as their guardian, was not bound to make these covenants or any of them, but it does not follow that the covenants are of no force or effect when made.   In *Murphy v. Price*, 48 Mo. 247, the defendants describing themselves as trustees of the University of Missouri, parties of the first part, "granted, bargained and sold unto the party of the second part" the described premises, and "the said parties of the first part for themselves, etc., covenant to warrant and forever defend," etc.   It was held that the statutory covenants embraced in the words, grant, bargain and sell, and the covenants of warranty were all personal covenants, as the parties of the first part did not grant or warrant as trustees.   It was also said that, if the grantors had no authority to bind the corporation, they would be personally bound by the covenants as having exceeded their authority, and this, too, though the words used showed that they did not covenant for themselves, citing *Sumner v. Williams*, 8 Mass. 162, and other cases.

In the case last cited the administrators of an insolvent estate, by virtue of an order of court, sold an equity of redemption, and in the deed covenanted that "they, as administrators, are lawfully seized of the premises," etc.   It was held in an action on the covenants, after eviction, that the administrators were personally liable on the covenants.   The same principle

has been often applied by the same court in cases of sales of real estate made by guardians acting under license from the proper court. *Whiting v. Dewey*, 15 Pick. 428 ; *Donahoe v. Emery*, 9 Met. 63. These cases are decided upon the ground that where a party contracts in the right of another, having no authority to bind the principal, he is to be held personally liable. Unless this is so, the other contracting party would have no remedy for a breach of the contract. On the same principle many other cases hold that, where an administrator or guardian conveys land with covenants, which covenants are in excess of the authority given him, or are made without any authority therefor, he is personally liable on such covenants. *Mitchell v. Hazen*, 4 Conn. 495 ; *Foster v. Young*, 35 Iowa, 27 ; *Magee v. Melon*, 23 Miss. 586 ; *Holyoke v. Clark*, 54 N. H. 578 ; Rawle on Covenants [5 Ed.] sec. 36, and cases cited in note.

But it is argued that the covenants implied by the statutory words used in the deed in question should be construed as applying only to the life-estate of Mrs. Hunt. While the deed shows that she had a life-estate only in the property, and that she made the conveyance by virtue of her own right and by the authority she had as guardian under the recited order, still, when she comes to convey, she couples her interest and the interest of the children together, and undertakes to convey the land absolutely. There is no effort to make the implied covenants apply to her life-estate only. She evidently supposed she was conveying, and the purchaser evidently supposed he was receiving, a perfect and complete title. A like argument was made in *Pratt v. Eaton*, 65 Mo. 157, where a husband joined his wife in a conveyance of her separate property. It was held that having joined in the covenants contained in the words, "grant, bargain and sell," he was as much bound thereby as if he had been the owner in fee. It

may well be that it was the statutory covenants which induced Abbott to accept the deed and pay the $1,200, which is shown to have been the full value of the land at that time.

Now in this case Diana A. Hunt had no authority whatever conferred upon her to sell the land of the minors, much less any power to make the covenants for them in their names. Our conclusion upon this branch of the case is that the deed contains the statutory covenants, and that they are the personal covenants of Diana A. Hunt.

3. As the deed from Mrs. Hunt to Abbott professes to convey an indefeasible estate in fee, it follows that any interest which she has inherited from her children who died prior to her death inures to Abbott and those claiming under him. So the trial court held by finding for the defendant as to the undivided one-eighth interest in the land.

4. With the foregoing propositions resolved in favor of the defendant, he next insists that plaintiffs are liable to him on the covenants in their mother's deed to Abbott because they inherited from her lands in North Carolina exceeding in value the damages arising from a breach of the covenants in their mother's deed, and that they are estopped to claim the land now in suit because of her covenants.

The grantee in the deed executed by Mrs. Hunt took possession under it, and he and those claiming under him have ever since held possession. Under these circumstances the covenant of seizin of an indefeasible estate in fee, as well as the covenant for further assurances, passed along with the land, and both covenants are available to the defendant, he being the party upon whom the loss falls. *Allen v. Kennedy*, 91 Mo. 324, and cases cited. While our statute abolishes lineal and collateral warranties and their incidents, still heirs and devisees of persons who have made any covenant

are answerable upon such covenant to the extent of lands descended. R. S. 1845, p. 220; R. S. 1879, sec. 3944. Heirs are chargeable on the covenant of their ancestor to the extent of the value of property descended to them. *Metcalf v. Smith's Heirs*, 40 Mo. 572; *State ex rel. Yeoman v. Hoshaw*, 86 Mo. 193. The plaintiffs will, therefore, be liable to the defendant upon the covenants made by their mother when he is evicted.

But the question whether they are estopped to claim the land because of those covenants and of assets descended is a different matter. If they derived their title to the land from their mother, then they would stand in her shoes and be estopped by her covenants. *Ragan v. McElroy*, 98 Mo. 349. But they acquired the land through their father's will, and not from their mother. Counsel for defendant contend that this circumstance makes no difference, and they cite *Chauvin v. Wagner*, 18 Mo. 532, and *Miller v. Bledsoe*, 61 Mo. 96. These cases do show that plaintiffs are liable on the covenants in their mother's deed to the extent of property inherited from her, but we do not understand them to hold that the plaintiffs are estopped to claim the land. Certain it is the case of *Barlow v. Delaney*, 86 Mo. 583, is an authority against the defendant. To estop the plaintiffs in this case, we must hence resort to the ancient doctrine of collateral warranty and rebutter, a doctrine which has been expressly abolished in this state by statute enacted years ago. It is held in Massachusetts that a deed from a father, with full covenants of warranty, will not estop or rebut his heirs, even to the extent of assets received by descent, from asserting against his grantee a title derived from their mother. *Russ v. Alpaugh*, 118 Mass. 369. There is, therefore, no such a thing as a technical estoppel in this case. We have not overlooked *Gudgell v. Tydings*, 10 S. W. Rep. 466. The ruling in that case stands upon a statute of the state of Kentucky, and as we have no statute

like the one upon which that case rests, it is of no aid in the disposition of the case in hand.

5.    This brings us to the further inquiry, whether the defendant is entitled to any equitable relief on his answer.    The facts upon which he seeks such relief are that Diana A. Hunt left no property in this state, that the plaintiffs, except Kelley, are non-residents and are now insolvent, that they have already conveyed to Kelley one-fourth of the property in question, and threaten to convey the residue.    In view of these averments, which we must take as true for all present purposes, the defendant insists that plaintiffs should be required to pay the damages arising to him upon the covenants of their mother as a condition precedent to a recovery of the land.

It is well-settled law in this state that an equitable defense may be interposed to an action of ejectment. Such a defense need not be a bar to a recovery.    Thus, where there is an equitable lien for improvements, the facts may be set up by the defendant, and he may have a lien declared, and payment of the lien may be made a condition to the delivery of possession to the plaintiffs. *Hannibal & St. Joseph Railway Co. v. Shortridge*, 86 Mo. 662.    On who is sued in ejectment for land purchased at a void administrator's sale may set up and show payment of the purchase price to the administrator, and he may have a lien declared therefor, and recovery of the possession of the land may be suspended until the amount is paid.    *Henry v. McKerlie*, 78 Mo. 416.    Now we do not say that the defendant has an equitable lien on the land in question for the damages which will arise from the breach of the covenants made by Mrs. Hunt.    But the effect of a recovery of the land by the plaintiffs is to make breach of the covenants of their mother.    The very judgment which they obtain brings upon them a liability to the defendant for a breach of those covenants.    There are no assets in this

state belonging to her estate, so there can be no administration upon her estate here.

The plaintiffs are non-residents and now insolvent. It is manifestly unjust and inequitable to allow the plaintiffs to recover the land, and then send the defendant to another state to recover his damages,—a fruitless errand. His remedy at law is wholly inadequate under the circumstances here disclosed. Insolvency or non-residence often furnishes a ground upon which a court of equity will declare an offset, where the offset would not be allowed at law. *Field v. Oliver*, 43 Mo. 200; *Fulkerson v. Davenport*, 70 Mo. 541; *Barnes v. McMullins*, 78 Mo. 260; *Wallenstein v. Selizman & Co.*, 7 Bush, 175. Such relief is not granted on the ground that the parties have cross demands, but in order to prevent injustice. While this is not a case of mutual accounts, still the circumstances present a strong equity in favor of the defendant. In the absence of a citation of any authorities more in point than those before noted, and assuming that the matters before stated are true, we hold that the trial court should assess the damages in favor of the defendant on the covenants in the deed made by Mrs. Hunt, and that execution on the judgment in ejectment in favor of plaintiffs should be stayed until those damages are paid; and, further, that plaintiffs should be enjoined from selling the land in question until the damages so assessed are paid. If it be true as stated in the answer, that Kelley took his deed with full knowledge of all the facts, and upon the consideration that he would prosecute this suit to final determination, he stands in no better position than the other plaintiffs.

6. The defendant set up a mass of other matters in his answer, to all of which plaintiffs replied. On these pleadings the parties went to trial. The bill of exceptions, after stating that defendant offered to prove specifically the matters before mentioned, says the

defendant offered to prove each and every allegation in his answer, but the evidence was excluded. We do not feel called upon to consume the time of this court in discussing questions which may never fairly arise in the case. The judgment is reversed and the cause remanded. All concur.